# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## STATESVILLE DIVISION
## CIVIL ACTION NO. 5:18-CV-00094-KDB-DSC

| | |
|---|---|
| JENNIFER ZICCARDI-COLSON<br>KEITH COLSON**,**<br><br>**Plaintiffs,**<br><br>v.<br><br>WAYNE TURNER<br>MARGARET TURNER<br>WILDLIFE WOODS CAMPGROUND,<br>INC.**,**<br><br>**Defendants.** | **ORDER** |

In this action Plaintiffs Keith Colson and Jennifer Ziccardi-Colson (together the "Colsons") allege that Defendants violated 42 U.S.C. § 1981 by discriminating against the Colsons on the basis of their race when the Colsons were denied an opportunity to lease a campsite at the Defendant Wildlife Woods Campground, Inc. (the "Campground"). Now before the Court are Defendants' Motion for Summary Judgment (Doc. No. 15) and Motion for Sanctions (Doc. No. 21).

The Court has carefully considered these motions and the parties' briefs and exhibits and heard oral argument on the motions from the parties' counsel on January 8, 2020. For the reasons discussed below, the Court will **GRANT** Defendants' Motion for Summary Judgment but will **DENY** their Motion for Sanctions. Defendants are entitled to summary judgment because Plaintiffs have not presented evidence from which a reasonable jury could find that Defendant Wayne Turner knew Plaintiffs' race when he denied their application for membership in the Campground. However, the Court finds that the alleged conduct of the Campgrounds' employees,

Defendants' abrupt refusal to provide Plaintiffs information about the reasons for the denial of their membership application and potential inconsistencies in the evidence raised suspicions of racial discrimination that reasonably supported the filing and pursuit of this litigation.

## I.     **LEGAL STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)). *See United States, f/u/b Modern Mosaic, LTD v. Turner Construction Co.*, et al., ___ F.3d ___, 2019 WL 7174550 (4th Cir. 2019). A factual dispute is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact is material if it might affect the outcome of the suit under the governing law." *Vannoy v. Federal Reserve Bank of Richmond*, 827 F.3d 296, 300 (4th Cir. 2016) (quoting *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013)).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact through citations to the pleadings, depositions, answers to interrogatories, admissions or affidavits in the record. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003)**.** "The burden on the moving party may be discharged by 'showing' ... an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial," *Id*. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. *Id*. at 324.

In determining if summary judgment is appropriate, "courts must view the evidence in the light most favorable to the nonmoving party and refrain from weigh[ing] the evidence or mak[ing] credibility determinations." *Variety Stores,* 888 F.3d at 659 (internal quotation marks omitted) (quoting *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017)); *see Modern Mosaic* at *2. "Summary judgment cannot be granted merely because the court believes that the movant will prevail if the action is tried on the merits." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568-69 (4th Cir. 2015) (quoting 10A Charles Alan Wright & Arthur R. Miller et al., Federal Practice & Procedure § 2728 (3d ed.1998)).

However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (internal citations omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Also, the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. *Id*. If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Id*. at 249-50.

In the end, the question posed by a summary judgment motion is whether the evidence as applied to the governing legal rules "is so one-sided that one party must prevail as a matter of law." *Id*. at 252.

## II.  FACTS AND PROCEDURAL HISTORY[1]

The Colsons, who are an interracial couple, wanted to purchase a camper which was permanently located on a leased site at the Wildlife Woods campground. The camper was owned

---

[1] This summary of the facts is taken from the record as filed by the parties.

by Rick and Regina Hampton, who are white friends of the Colsons. The Colsons wanted to use the campsite for recreational purposes and for convenient temporary housing for Plaintiff Ziccardi-Colson, a nurse who works in a hospital not far from the Campground.[2]

Mr. Colson visited the property a total of three times—once by himself, and the other two times with Ms. Ziccardi-Colson. On or around May 31, 2015, Mr. Colson made his initial visit by himself to the Campground to examine the Wildlife Woods property as a whole. (Keith Colson Dep. 74:7). Around June 10, 2015, both Mr. Colson and Mrs. Ziccardi-Colson visited the campground to look at the camper owned by the Hamptons as well as view the rest of the site. While on the property, the Plaintiffs stopped by the office. Only Mr. Colson went into the office, while Mrs. Ziccardi-Colson remained in the car. There, Mr. Colson spoke to Jane McNealy, a white female employee. (Keith Colson Dep. 109:2-14) The Colsons then drove around the campsite in search of the lot.

They also decided on that date to explore the opportunity to acquire other properties. While the Plaintiffs were driving around, they noticed several "For Sale" signs on properties and circled the available lots on a map of the property. (Plaintiffs Ex. 3). When the Plaintiffs arrived back at the office, they allegedly were met with disdain by an older white woman who was an employee of Wildlife Woods and a white male who glared at them. When Plaintiff Ziccardi-Colson inquired about properties that were listed for sale in the sales book, the employee allegedly stated in a contemptuous manner that each of the properties had been sold. When Plaintiff Ziccardi-Colson inquired about a boat for sale that was displayed on the dry erase board, McNealy quickly wiped

---

[2] The Colsons alleged that when there is inclement weather or when she would have to work double shifts, it would be easier for her to sleep over in the camper and then go to work rather than to commute the entire distance from their home.

the board with her hand and said in a demeaning manner that the boat had been sold as well. (Keith Colson Dep. 89:20-92:10; Ziccardi-Colson 46:1; 47:44).

On June 12, 2015, the Colsons returned to Wildlife Woods to confirm the availability of other campsites and to look at Lot No. 148, which the Hamptons owned. After viewing the camper and campsite, the Colsons left the property. There is no evidence that either Wayne or Margaret Turner were in the office or otherwise met or saw the Colsons during their various visits to the Campground.

On June 15, 2015, the Colsons and the Hamptons negotiated a price for the camper, and Keith Colson submitted a Membership Application by fax to the Campground. (Keith Colson Dep. 55:8–56:9). The application does not ask for the race of the applicant and the Colsons did not indicate their race on the application. After receiving Mr. Colson's application, the Campground's office faxed it to Wayne Turner, who Defendants claim is the sole decision-maker concerning whether to grant or deny membership applications submitted to the Campground. (Wayne Turner ("Turner") Dec. ¶ 4).

Defendants testified that in evaluating the Colson's application, Mr. Turner followed the same protocol he previously followed with all membership applications, which was to ask the Campground's security officer, Robert Pruette, who also is a deputy with the Catawba County Sheriff's Department, to run a "background check" on both Plaintiffs. (Turner Dec. ¶¶ 5-7, 10-11). Mr. Turner says that he believes that if someone cannot follow the rules of the road or the State, they are unlikely to follow the rules of the Campground. (Turner Dec. ¶¶ 11, 12). Plaintiffs have not presented evidence that disputes either that Mr. Turner is the sole decisionmaker or the consistency of his process for approving Campground membership applications.

After running a background check, Deputy Pruette advised Mr. Turner that Mr. Colson had a number of traffic offenses and that Ms. Ziccardi-Colson's record had been sealed in New York. (Turner Dec. ¶ 10; Declaration of Robert Pruette ("Pruette Dec.") ¶ 4). Deputy Pruette explained that he did not know why Ms. Ziccardi-Colson's record was sealed, only that it must be for some reason. (*Id*). Mr. Turner testified that as a result of these background check issues, he denied Plaintiffs' membership application. (Turner Dec. ¶¶ 10-12).[3] Mr. Turner claims that he had never met or seen either Plaintiff before his denial of their application and did not know their race at that time. (Turner Dec. ¶ 8). In turn, Plaintiffs admit that they never met Mr. Turner until the date of their depositions in this case. (Colson Dep. 111:15-22; Ziccardi-Colson Dep. 69:24-70:7, 88:2-24).

Similarly, Ms. Turner testified that she had never met or seen either Plaintiff before her husband's denial of their application and also did not know their race at that time. (Margaret Turner Dec. ¶ 3). Defendants further testified that Ms. Turner was uninvolved with the denial of the membership application and was not a part owner of the Campground.

Not long after the application was submitted, Plaintiff Zicardi-Colson contacted the Campground to confirm that they received the fax and was told that the application had been denied. (Keith Colson Dep. 56:1-57:25). When she sought a reason for the denial, she was told that "you just can't live here" and was told that they did not have to give a reason. (Ziccardi-Colson Dep. 101:23-24; 102:1-3). When she was told that the Company did not have to give her a reason, Plaintiff Ziccardi-Colson asked that the owner return a call to her. The owner never called her

---

[3] Plaintiff Colson testified to only having received two traffic tickets—one during his freshman year of college in 1990 for passing another vehicle on a bridge and a speeding ticket on his way to a funeral. (Colson Dep. 24:9-23).

back. When Ziccardi-Colson called the office again, she was told by the woman who answered the phone that she would not get a call from the owner. (Keith Colson Dep. 61:15-18).

While Plaintiffs have questioned the treatment they received at the Campground and the reason for the denial of their membership application, Plaintiffs have not alleged that anyone associated with the Campground ever referenced Plaintiffs' race or made any racially insensitive or derogatory statements or comments to them. (Colson Dep. 128:8– 130:6; Ziccardi-Colson Dep. 92:3-6).

After Plaintiffs application was denied, Plaintiffs filed a complaint with the U.S. Department of Housing and Urban Development ("HUD"), alleging their application had been denied by the Campground because of their race. (Colson Dep. 118:9-12). HUD forwarded Plaintiffs' complaint to the N.C. Human Relations Commission for investigation. (*Id.* 120:8-11). After the Human Relations Commission completed its investigation, it issued a determination that there was no cause to believe Defendants had unlawfully discriminated against Plaintiffs. (Colson Dep. 123:6 – 124:24, Ex. 9).

Plaintiffs then filed the present action asserting a claim against Defendants under 42 U.S.C. § 1981 for the denial of their application on the alleged basis of their interracial marriage.

### III. DISCUSSION

#### A. Section 1981 Claim

Section 1981 guarantees "all persons within the jurisdiction of the United States... the same right... to make and enforce contracts... as enjoyed by white citizens." 42 U.S.C. § 1981(a). However, "[t]o establish a violation of § 1981, a plaintiff must offer proof of intentional or purposeful discrimination." *Martin v. Airborne Exp.*, 16 F. Supp.2d 623, 629

(E.D.N.C. 1996); *see Gen'l Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 391 (1982).

The test for intentional discrimination under Section 1981 is the same as that used in Title VII discriminatory treatment cases. *See Mullen v. Princess Anne Volunteer Fire Co.,* 853 F.2d 1130, 1136 (4th Cir.1988); *Gairola v. Com. of Virginia Dep't of Gen. Servs.,* 753 F.2d 1281, 1287 (4th Cir.1985). Thus, Plaintiffs can show unlawful discrimination under 42 U.S.C. § 1981 through direct evidence of racial animus or, in the absence of direct evidence, through circumstantial evidence using the three-step, burden shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See also*, *Jackson v. Blue Dolphin Comm. of N.C., LLC*, 359 F. Supp.2d 442, 454 (W.D.N.C. 2004).

Plaintiffs do not contend that they have direct evidence of intentional discrimination. Instead, they seek to prove their claim under the framework of the *McDonnell Douglas* analysis. Under *McDonnell Douglas*, a plaintiff must first establish a prima facie case of discrimination. *See, e.g., St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993); *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981). If a plaintiff establishes a prima facie case, the burden shifts to the defendant to produce evidence that the defendant took the adverse action "for a legitimate, nondiscriminatory reason." *Burdine*, 450 U.S. at 254. If the defendant offers admissible evidence sufficient to meet its burden of production, the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the stated reasons were not its true reasons but were a pretext for discrimination. *Hill*, 354 F.3d at 285 (quotation omitted).

To establish a *prima facie* case of intentional race discrimination under Section 1981, Plaintiffs must show that: (1) they are members of a racial minority; (2) the Defendants had an intent to discriminate against them on the basis of race; and (3) the alleged discrimination

concerned one or more of the activities enumerated in the statute; in this case, the making of a contract. See *Bellows v. Amoco Oil Co*., 118 F.3d 268, 274 (5th Cir.1997); *Arora v. Daniels*, 2018 WL 1597705 *10 (W.D.N.C. April 2, 2018) (citing same).

Defendants argue that Plaintiffs cannot satisfy the second element of this test. With respect to this element, a plaintiff must show sufficient facts to support a reasonable inference that the defendant's action was motivated by race. *Id.*; *see also Woods v. City of Greensboro*, 855 F.3d 639, 648 (4th Cir. 2017). Plaintiffs have, however, not proffered any evidence to establish that the decision-maker in this case – Mr. Turner – knew the Plaintiffs' race or that they were in an interracial marriage. (Colson Dep. 146:5-16 ("I don't have any evidence that [Mr. Turner] found out or knew [my race]. I don't have any evidence of that."); Ziccardi-Colson Dep. 88:2-13). Also, Mr. Turner's sworn undisputed testimony states that he had no such knowledge. (Turner Dec. ¶¶ 8, 13).

Of course, to be "motivated" by Plaintiffs' race in denying their membership application, Mr. Turner would first have needed to know their race or that they were in an interracial marriage. *See*, *Dowe v. Total Action Against Poverty In Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998) (in employment retaliation case, the court stated, "[s]ince, by definition, an employer cannot take action because of a factor of which it is unaware, the employer's knowledge that the plaintiff engaged in protected activity is absolutely necessary to establish the third element of a prima facie case.") Plaintiffs suggest that a jury could simply disbelieve Mr. Turner's testimony that he did not know their race based on the conduct of the other Campground employees described above. However, in the absence of <u>any</u> evidence that Mr. Turner had knowledge of Plaintiffs' race, allowing their claims to proceed on the possibility that the jury could just speculate otherwise would improperly allow Plaintiffs to in

effect avoid proof of their prima facie case (which they admit is plainly required).[4]

Accordingly, because the undisputed evidence here establishes that Mr. Turner did not know Plaintiffs' races at the time he made his decision, Plaintiffs cannot establish a prima facie case under Section 1981, and Defendants are entitled to summary judgment on Plaintiffs' claims under that statute.[5]

### B. Motion for Sanctions

On December 3, 2019, approximately a year and a half after this action was filed, Defendants filed a motion asking the Court to sanction Plaintiffs' attorney under Rule 11 of the Federal Rules of Civil Procedure for filing and pursuing this action. Rule 11 provides in pertinent part:

---

[4] Plaintiffs have argued that a different set of elements needs to be proven for their prima facie case. *See Williams v. Staples, Inc.* 372 F. 3d 662, 667 (4th Cir. 2004); *Lloyd v. Waffle House, Inc.,* 347 F. Supp. 2d 249 (W.D.N.C. 2004) (citing same). In Williams, the court held that to "establish a prima facie case of discrimination in a §1981 cause of action relating to the purchase of goods or services, [a plaintiff] must establish that: (1) he is a member of a protected class; (2) he sought to enter into a contractual relationship with the defendant; (3) he met the defendant's ordinary requirements to pay for and to receive goods or services ordinarily provided by the defendant to other similarly situated customers; and (4) he was denied the opportunity to contract for goods or services that was otherwise afforded to white customers." The Court finds that the elements of a prima facie case for discrimination in the "making of contracts" stated above is more applicable to this action. However, even with respect to this alternative prima facie case, Plaintiff has failed to present evidence that white applicants for Campground membership were treated differently. Also, the relevant decisionmaker's knowledge of the Plaintiffs' race would nevertheless remain a fundamental requirement in proving *intentional* discrimination under the *McDonnell Douglas* framework.

[5] Plaintiffs note that Defendants have offered no justification for why they were treated poorly even before the results of the background check were returned and argue that the jury may find that Mr. Turner's claimed reliance on their traffic violations and sealed criminal record was merely a pretext for unlawful discrimination. However, whatever the merits of the argument that the Campground's stated reasons are "unworthy of credence," without some proof that Mr. Turner knew their race, the denial of Plaintiffs' membership application – even if it was made for reasons that may not appear completely rational or was in fact unwise – logically cannot reflect unlawful intentional racial discrimination.

> By presenting to the court a pleading ... an attorney or unrepresented party certifies that to the best of the person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances. . ..
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims ... are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law...;
>
> (3) the factual contentions have evidentiary support or ... will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> …
>
> If … the court determines that Rule 11(b) has been violated, the Court may impose an appropriate sanction on any attorney, law firm or party that violated the rule or is responsible for the violation. …
>
> Fed. R. Civ. Proc. 11(b).

The issues involved in determining whether an attorney has violated Rule 11 involve "fact-intensive, close calls." *Cooter & Gell v. Hartmax Corp*., 496 U.S. 384, 403 (1990). The Court is accordingly given broad discretion to determine if a Rule 11 violation has occurred and, if so, an appropriate sanction. *Id*. Exercising that discretion, the Court finds that Rule 11 sanctions are not warranted considering all the circumstances of this action. Although the Plaintiffs' claims do not have sufficient merit to proceed past summary judgment and the case might understandably be ultimately viewed as wasteful to all concerned, the questionable conduct of Defendants' employees (which has never been disputed or explained by sworn testimony) and the Defendants' refusal to provide Plaintiffs' with a simple courteous response to their inquiry as to why their membership application was denied provided ample suspicion of the possibility of unlawful discrimination to support the filing and pursuit of those claims.

In support of their motion for sanctions, Defendants repeatedly argue that Plaintiffs' admitted lack of personal knowledge concerning whether Mr. Turner knew their race made their

claims unreasonable. However, the facts concerning how the Campground reached the decision to deny their membership application, who was involved in that decision, etc. were primarily, if not wholly, within the knowledge of the Defendants and therefore properly subject to discovery and litigation. Again, while Plaintiffs' proof falls short in the end, based on the nature of the Campground as a small business where employees might well communicate with the relevant decision-makers even if they are not involved with final decisions, it was not unreasonable for Plaintiffs to pursue the case to determine all the relevant evidence following their experience with the Campground's employees.[6] Moreover, Defendants' intentional choice to refuse to respond to Plaintiff's reasonable request for an explanation of the decision to deny their membership application counsels against awarding Rule 11 sanctions. Indeed, had Mr. Turner or the Campground provided a professional, straightforward response to the Plaintiffs it may have headed off the litigation entirely.[7]

Defendants also rely heavily on the investigation done by the North Carolina Human Relations Commission. However, while the findings of the Commission could have counseled in favor of a decision not to pursue the case, the interviews relied on by the Commission were neither done under oath or by Plaintiffs' counsel so the Commission's findings are not conclusive either on the merits nor of an award of Rule 11 sanctions. *See Rhinehart v. City of Gastonia*, 2010 U.S. District Lexis, 56522 *1 (W.D.N.C., May 11, 2010). Also, the potential evidentiary inconsistencies revealed in the Commission's determination further supports the reasonableness of Plaintiffs'

---

[6] Defendants cannot reasonably complain about the extent of Plaintiffs' litigation efforts, which appear to have included only limited written discovery. Plaintiffs, perhaps ultimately to their detriment, did not depose the Defendants or other witnesses with potentially relevant knowledge.
[7] Further, during the litigation, Defendants' initial "response" to Plaintiffs' discovery requests provided only (mostly meritless) objections and no substantive information to move the case forward productively.

pursuit of the action. Finally, if the Commission's findings were in fact determinative on a Rule 11 motion then Defendants' decision to wait nearly a year and a half to file their motion for sanctions raises questions as to the timeliness of that motion.

In sum, the Court finds that although in hindsight it may be clear that the ultimate lack of evidentiary support for Plaintiffs' claims could well have led to a resolution of the case more quickly, the conduct of the Defendants and their counsel is not without fault; so, all things considered, the imposition of sanctions is not warranted against Plaintiffs or their counsel.

## IV. ORDER

**NOW THEREFORE IT IS ORDERED THAT**:

1. Defendant's' Motion for Summary Judgment (Doc. No. 15) is **GRANTED**;
2. Defendants' Motion for Sanctions (Doc. No. 21) is **DENIED**.
3. The Clerk is directed to close this matter in accordance with this Order.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: January 8, 2020

Kenneth D. Bell
United States District Judge